UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| RALPH IAZZETTA and ELIZABETH IAZZETTA,<br><br>  Plaintiffs<br><br>v.<br><br>SMITH'S FOOD & DRUG CENTERS, INC. dba SMITH'S FOOD & DRUG #346,<br><br>  Defendant | 2:14-cv-01810-JAD-NJK<br><br>**Order Granting in Part and Denying in Part Defendant's Motion in Limine to Strike Plaintiffs' Expert Gary A. Presswood**<br><br>**and**<br><br>**Order Granting Plaintiffs' Motion in Limine to Exclude Collateral Source Evidence**<br><br>[ECF 24, 28] |

Ralph and Elizabeth Iazzetta sue Smith's Food & Drug Centers, Inc. in this personal-injury action for damages that they claim they suffered because Ralph slipped on a wet patch of floor while he was shopping in the store.[1] Smith's now moves in limine to strike the Iazzettas' expert witness Gary A. Presswood,[2] and the Iazzettas move in limine to exclude evidence of payments made by Medicare plus any medical-provider discounts or write-offs secured by Medicare.[3]

Exercising my gatekeeping function under FRE 702, I grant Smith's motion in part, exclude the bulk of Presswood's opinions as foundationless and unhelpful, and limit his testimony to his knowledge of safety-engineering principles. And because any payment made by Medicare on Ralph's behalf falls squarely within Nevada's per se rule barring collateral-source evidence at trial, and I decline to recognize an exception to that rule for medical-provider discounts here, I grant the Iazzettas' motion and exclude evidence of any Medicare payment and any adjustment, write-down, or discount on Ralph's medical bills.

---

[1] ECF 1-1.

[2] ECF 24.

[3] ECF 28.

**Discussion**

The Federal Rules of Evidence do not expressly authorize motions in limine, but district courts can rule on pretrial evidentiary motions under their "inherent authority to manage the course of trials."[4] Pretrial consideration avoids the futile attempt to "unring the bell" when jurors see or hear inadmissible evidence, even when it is stricken from the record.[5] It may also save time by minimizing side-bar conferences and other trial disruptions and by preventing the need to call some witnesses.[6]

These considerations are weighed against the court's ability to consider evidence in the context of trial, where the court is "better situated . . . to assess the value and utility of evidence."[7] Limine rulings are provisional; they are "not binding on the trial judge [who] may always change [her] mind during the course of a trial."[8] Denying a motion in limine does not guarantee that all evidence raised in the motion will be admissible at trial.[9] Instead, it "merely means that[,] without the context of trial, the court is unable to determine whether the evidence in question should be excluded."[10]

---

[4] *Luce v. United States*, 469 U.S. 38, 40 n. 4 (1984).

[5] *Brodit v. Cambra*, 350 F.3d 985, 1004–05 (9th Cir. 2003) (quoting *Kelly v. New W. Fed. Savs.*, 49 Cal. App. 4th 659 (Cal. Ct. App. 1996)).

[6] *United States v. Tokash*, 282 F.3d 962, 968 (7th Cir. 2002).

[7] *Wilkins v. Kmart Corp.*, 487 F. Supp. 2d 1216, 1218 (D. Kan. 2007); *accord Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975) ("A better practice is to deal with question of admissibility of evidence as they arise.").

[8] *Ohler v. United States*, 529 U.S. 753, 758 n. 3 (2000) (citing *Luce*, 469 U.S. at 41–42 (noting that in-limine rulings are always subject to change, especially if the evidence unfolds in an unanticipated manner).

[9] *Indiana Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004).

[10] *Id.*

**A.    Presswood's expert testimony**

Federal Rule of Evidence 702 allows a qualified expert witness to offer opinion testimony if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.[11]

When determining the admissibility of expert evidence in advance of trial, the court undertakes a "gatekeeping" function to ensure that the jury's consideration of evidence is not contaminated by irrelevant or scientifically unsupported testimony.[12] The court enjoys broad discretion over the discharge of this gatekeeping authority, "not only . . . in determining whether an expert[']s testimony is reliable, but also in deciding how to determine the testimony's reliability."[13]

Rule 702 requires the court to review the expert's opinion testimony for "overall sufficiency of the underlying facts and data, and the reliability of the methods, as well as the fit of the methods to the facts of the case."[14] When a court concludes "that there is simply too great an analytical gap between the data and the opinion proffered[,]" the court may properly exclude the expert's testimony as unreliable.[15]

The Iazzettas' civil engineering expert Gary Presswood has opined that (1) the tile floor in the Smith's store "was hazardous to pedestrians"; (2) the tile floor in the Smith's store "was

---

[11] FED. R. EVID. 702; *see Daubert*, 509 U.S. 579.

[12] *See U.S. v. Alatorre*, 222 F.3d 1098, 1100–03 (9th Cir. 2000).

[13] *Elsayed Mukhtar v. Cal. St. Univ., Hayward*, 299 F.3d 1053, 1064 (9th Cir. 2002), *amended on other grounds by* 319 F.3d 1073 (9th Cir. 2003).

[14] *U.S. v. W.R. Grace*, 504 F.3d 745, 765 (9th Cir. 2007).

[15] *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997); *c.f. Claar v. Burlington Northern R. Co.*, 29 F.3d 499, 502 (9th Cir. 1994) (when there is no indication of the reasoning and methods underling an expert witness's conclusion, that conclusion is properly excluded from evidence under FRE 702).

the cause of [Ralph's] fall and injuries"; (3) if Ralph's fall is determined "to be the result of a wet walkway following a floor-cleaning operation," then Smith's failure to warn or restrict access to the area indicates "a lack of appropriate risk management"; and (4) "there is no evidence to indicate [that] Ralph . . . contributed to his fall and injuries in any way."[16]  Smith's argues that Presswood should be completely precluded from testifying at trial because his opinions are not based on sufficient facts or data or are improper legal or factual conclusions.[17]  Smith's points out—critically—that Presswood admittedly has not examined the floor where the incident occurred.[18]  Smith's also argues that, despite Presswood's opinion to the contrary, there is no evidence that the floor was wet due to cleaning at the time of the incident.[19]

The Iazzettas respond that Smith's destroyed or replaced the floor,[20] and that Presswood could not examine the cart wipe because Smith's failed to preserve it after the incident.[21]  They point out that there is conflicting evidence regarding whether the floor was wet due to cleaning.[22]  And they confirm that Presswood will not offer medical-related testimony or an opinion

---

[16] ECF 34-8 at 4.  Related to these opinions is Presswood's comment that even if Smith's floor "was evaluated and determined to meet the minimum safe conditions for a dry floor," that the "detrimental effects of a wet floor or one with a wet cart wipe left on the floor" must be considered.  ECF 34-8 at 3.  Smith's points out that Presswood has not evaluated any Smith's cart wipe or what effect a cart wipe would have on the floor.  ECF 24 at 6-7l; ECF 34-6 at 7 (55:13–56:6 of the transcript) (Robert Wallace Chesnik, Smith's FRCP 30(b)(6) and percipient witness, testified that he did not see and therefore did not retain any cart wipe).  And there does not appear to have been any impediment to Presswood obtaining and analyzing such a wipe.

[17] ECF 24.

[18] ECF 24 at 6-7.

[19] ECF 24 at 7–8.

[20] But the Iazzettas have not provided any evidence that the floor was destroyed or removed, do not state when that occurred, and do not articulate that the destruction or removal prevented Presswood from evaluating the floor.

[21] ECF 34 at 4–5, 7.

[22] Ecf 34 at 3–4.

regarding the causation of Ralph's injuries,[23] but argue that he can offer testimony regarding Ralph's comparative negligence based on his "review of the information in this case and the reports provided by the parties."[24]

### 1. Presswood lacks a sufficient factual basis to testify that Smith's tile floor is inherently hazardous to pedestrians or caused Ralph's fall.

Presswood acknowledges that he has not actually inspected the tile floor in this Smith's store,[25] but he opines that the floor was inherently hazardous to pedestrians and caused Ralph's fall.[26] Presswood bases his opinions solely on the fact that "he has had the opportunity to evaluate many floor surfaces especially tile floors such as those found in the subject Smith's facility."[27] Presswood does not ascribe his opinion to all tile floors regardless of vagaries, but instead to "tile floors such as those found in the subject Smith's facility."[28] But neither Presswood nor the Iazzettas point to any evidence indicating anything about the floor other than the general fact that it is covered in tile.[29] As far as the record shows, the type of tile, its manufacturer, age, condition, and what kind of finish it has, if any, are all unknown to this expert. Presswood offers nothing to connect the floors that he has examined with the floor in this

---

[23] ECF 34 at 11.

[24] *Id.*

[25] ECF 34-8 at 2, 3 ("I have not had the opportunity to inspect and evaluate the physical conditions of the site where this incident occurred[,]" "I would like the opportunity to evaluate the floor").

[26] ECF 34-8 at 4. Presswood also opined that Smith's tile floor caused Ralph's injuries, but the Iazzettas acknowledged that they will not proffer any testimony from Presswood regarding the causation of Ralph's injuries. ECF 34 at 11.

[27] ECF 34-8 at 3.

[28] ECF 34-8 at 3.

[29] *See e.g.* ECF 34-7 (list of "data relied upon/basis of opinions").

Smith's store.[30]

I conclude that the analytical gap between the data and the opinions proffered by Presswood that Smith's tile floor was inherently dangerous and caused Ralph's fall, as well as Presswood's bald expectation that Smith's floor would not possess the industry-minimum slip resistance, is simply too great. I also conclude that these opinions and expectation are not based on sufficient facts or data. I therefore exercise my gatekeeping function under Rule 702 and preclude Presswood from testifying at trial about these opinions and expectation, and I exclude those corresponding portions of his expert report from trial.

### 2. *Presswood's opinions on Smith's safety and risk-management procedures lack the substance necessary to aid the jury.*

Presswood also opines that, if it is determined that Ralph's fall was the result of a wet walkway following a floor-cleaning operation, then Smith's failure to warn or restrict access to that area would indicate a lack of appropriate risk management.[31] Presswood further opines that there is no evidence to indicate that Ralph contributed to his fall or injuries.[32] Smith's does not dispute that Presswood is qualified to offer opinions regarding safety engineering, risk management, or Smith's safety standards and practices, but instead argues that Presswood is offering improper legal conclusions.[33] Smith's also takes issue with Presswood's conclusion that the evidence indicates that the floor might have been wet at the time of the incident due to a cleaning operation.[34] According to Smith's, there is no evidence that the floor was wet due to cleaning.[35] The Iazzettas respond that there is conflicting evidence regarding whether the area

---

[30]

[31] *See* ECF 34-8 at 4.

[32] ECF 34-8 at 4.

[33] ECF 24 at 10.

[34] ECF 24 at 7–8.

[35] *See e.g.* ECF 24 at 7–8.

where Ralph fell had recently been mopped.[36]

I do not address Smith's challenge that Presswood's evidentiary conclusion is wrong because, in analyzing expert testimony under FRE 702, "The judge is 'supposed to screen the jury from unreliable nonsense opinions, but not to exclude opinions merely because they are impeachable.'"[37] "Simply put, '[t]he district court is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury.'"[38]

Presswood's opinions about Smith's safety practices lack that requisite substance. Although "[b]reach of duty and causation are classically questions of fact[,]"[39] a witness who is qualified as an expert may testify only if their "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine the fact in issue. . . ."[40] "It is well settled [in Nevada] that the standard of care must be determined by expert testimony unless the conduct involved is within the common knowledge of laypersons."[41]  When "the service rendered does not involve esoteric knowledge or uncertainty that calls for the professional's judgment, it is not beyond the knowledge of the jury to determine the adequacy of performance."[42]

---

[36] ECF 34 at 3–4.

[37] *City of Pomona v. SQM North America Corp.*, 750 F.3d 1036, 1044 (9th Cir. 2014) (quoting *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013)).

[38] *Id.* (quoting *Alaska Rent-A-Car*, 738 F.3d at 969–70).

[39] *Klasch v. Walgreen Co.*, 264 P.3d 1155, 1161 (Nev. 2011) (en banc) (citing *Frances v. Plaza Pacific Equities*, 847 P.2d 722, 724 (Nev. 1993); *Nehls v. Leonard*, 630 P.2d 258, 260 (Nev. 1981)).

[40] FED. R. EVID. 702(a).

[41] *Daniel, Mann, Johnson & Mendenhall v. Hilton Hotels Corp.*, 642 P.2d 1086, 1087 (Nev. 1982) (citing *Bialer v. St. Mary's Hosp.*, 427 P.2d 957 (Nev. 1967)).

[42] *Id.* (citing *Aetna Ins. Co. v. Hellmuth, Obata, Kassabaum Inc.*, 392 F.2d 427, 478 (8th Cir. 1968)).

Given the Iazzettas' theory of the case, the jury will be asked to consider whether Smith's, by not providing warnings, restricting access to the area, or following its safety procedures for cleaning the floors, created a slipping hazard. And it might be asked to consider whether Ralph contributed to his fall or injuries. Because these issues fall within the common knowledge of laypersons, and Presswood has no greater or more specialized knowledge of these facts than the jurors will, I conclude that testimony from Presswood on these questions of fact will not be helpful to the jury. I therefore preclude Presswood from testifying at trial about these opinions, and I exclude those portions of his expert report from trial. This leaves Presswood able to testify only about the three principles of safety engineering that he discusses in his expert report.[43]

### B. Medical-provider discounts are collateral-source information that may not be introduced at trial.

Both sides agree that Ralph is a Medicare recipient and that some of his medical bills have been paid by Medicare. Both sides presume that Medicare negotiated medical-provider discounts on Ralph's behalf when paying those bills.[44] The Iazzettas move to exclude evidence of any payments made by Medicare as well as any medical-provider discounts or write-offs that Medicare secured on Ralph's behalf.[45] Smith's, relying largely on the Nevada Supreme Court's decision in *Tri-County Equip. & Leasing, LLC v. Klinke*,[46] responds that I should not exclude any discount, write-down, or adjustment that Medicare secured because the trend in tort law has been toward limiting the application of the collateral source rule to adjustments made by government insurance programs like Medicare and Medicaid.[47]

---

[43] ECF 34-8 at 3.

[44] ECF 28 at 4; ECF 35 at 2.

[45] ECF 28 at 4–6.

[46] *Tri-County Equip. & Leasing, LLC v. Klinke*, 286 P.3d 593 (Nev. 2012) ("*Klinke*").

[47] ECF 35 at 5–7.

In a diversity action like this one, a federal court applies state substantive law and federal procedural law.[48]  "[S]tate evidence rules that are 'intimately bound up' with the state's substantive decision making must be given full effect by federal courts sitting in diversity."[49]  "Moreover, some state law rules of evidence 'in fact serve substantive state policies and are more properly rules of substantive law within the meaning of'" *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938).[50]

Nevada has "a *per se* rule barring the admission of a collateral source of payment for an injury into evidence for any purpose."[51]  When adopting this rule, the Nevada Supreme Court followed the reasoning of the United States Supreme Court in *Eichel v. New York Central R.R. Co.* that "the prejudicial impact of collateral source evidence *inevitably* outweighs the probative value of [that] evidence on the issue of a plaintiff's credibility and motives."[52]  "'[T]he focal point of the collateral source rule is not whether an injured party has incurred certain medical expenses.  Rather, it is whether a tort victim has received benefits from a collateral source that cannot be used to reduce the amount of damages owed by a tortfeasor.'"[53]  Although an evidentiary doctrine, Nevada's collateral-source rule is closely tied to Nevada's substantive policy and thus constitutes the substantive law of this state within the meaning of *Erie*.  Smith's non-Nevada authorities are not persuasive.

*Klinke*, however, is persuasive—but not for the reasons that Smith's believes.  In *Klinke*,

---

[48] *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938); *accord Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996).

[49] *Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 666 (9th Cir. 2003) (quoting *Wray v. Gregory*, 61 F.3d 1414, 1417 (9th Cir. 1995)).

[50] *Id.*

[51] *Proctor v. Castelletti*, 911 P.2d 853, 854 (Nev. 1996) (per curiam).

[52] *Id.* (citing *Eichel v. New York Central R.R. Co.*, 375 U.S. 253 (1963)).

[53] *Klinke*, 286 P.3d at 598 (Gibbons, J., concurring) (quoting *Acuar v. Letourneau*, 531 S.E.2d 316, 322 (Va. 2000) (quotations omitted)).

the en banc Nevada Supreme Court reiterated that Nevada recognizes a narrow statutory exception to the collateral-source rule for the admission at trial of evidence of workers' compensation payments.[54] Although the exception outlined in *Klinke* depends on a workers' compensation statute (NRS 616C.215) that does not apply in this general tort case, the *Klinke* court provided guidance on whether medical-provider discounts in a non-workers' compensation case fall within the scope of Nevada's collateral-source rule. The court recounted numerous cases in which courts had addressed that issue and concluded from those "competing authorities, it is apparent that there are numerous reasons for medical provider discounts, including discounts that result when an injured party's insurance has secured medical provider discounts as part of the health insurance plan."[55] "At least in those circumstances," the court continued, "such benefits may reside within the scope of the collateral source rule, although that is a legal issue we leave for a case that requires its determination."[56] Further, "Whether the collateral source rule applies to other types of medical expense discounts would require evidence of the reason for the discount and its relationship to the third-party payment."[57] Justice Gibbons went further in his concurring opinion to explain "that the collateral source rule bars the introduction of evidence showing medical provider discounts or write-downs. . . ."[58] Justice Gibbons determined that his conclusion "is consistent with a majority of jurisdictions that have addressed this issue."[59] "Evidence of payments showing write-downs is irrelevant to a jury's determination of the reasonable value of medical services and will likely lead to jury confusion."[60]

---

[54] *Id.* at 595 (citing *Cramer v. Peavy*, 3 P.3d 665, 669 (Nev. 2000)).

[55] *Id.* at 597 n. 6 (collecting cases).

[56] *Id.*

[57] *Id.*

[58] *Id.* at 598 (Gibbons, J., concurring).

[59] *Id.* (Gibbons, J., concurring) (collecting authorities).

[60] *Id.* (Gibbons, J., concurring).

Both parties agree that Ralph is a Medicare beneficiary and that Medicare paid at least some of Ralph's medical expenses, and no party disputes that Medicare is a source that is wholly collateral to the alleged tortfeasor here—Smith's. Any payment made by Medicare on Ralph's behalf falls squarely within Nevada's "per se rule prohibiting 'the admission of a collateral source of payment for an injury into evidence for any purpose.'"[61] I thus grant the portion of the Iazzettas' motion seeking to exclude evidence of any payment that Medicare made for Ralph.

No party offers evidence that Ralph received any discount, write-down, or adjustment. Rather, both parties merely speculate that, because Ralph is a recipient of Medicare benefits, he received discounts, write-downs, or adjustments on the approximately $36,911.88 that he disclosed in medical expenses.[62] The failure to identify the specific evidence that a party wants excluded from trial is typically fatal to an in-limine motion.[63] But the category of discount that the Iazzettas broadly identify—Medicare adjustments—is precisely the type of discount "that result[s] when an injured party's insurance company has secured a medical provider discount as part of the health insurance plan" that the *Klinke* court opined "may reside within the scope of the collateral source rule."[64] With this guidance, and on the evidence before me, I decline to recognize an exception to Nevada's collateral-source rule for medical-provider discounts. I thus grant the Iazzettas' motion to exclude from trial evidence that Medicare secured any discount, write-down, or adjustment from Ralph's medical providers, and I decline Smith's request to certify this question to the Nevada Supreme Court under NRAP 5.[65]

---

[61] *Bass-Davis v. Davis*, 134 P.3d 103, 110 (Nev. 2006) (quoting *Proctor*, 911 P.2d at 854).

[62] ECF 28 at 3.

[63] *Sundstrand Corp. & Subsidiaries v. Comm. of IRS*, 89 T.C. 810 (1987) (providing that the motion in limine procedure "'should be used, if used at all, as a rifle and not as a shotgun.'" (quoting *Lewis v. Buena Vista Mut. Ins. Assn.*, 183 N.W.2d 198, 201 (Iowa 1971))).

[64] *Klinke*, 286 P.3d at 597 n. 6.

[65] ECF 35 at 7–8.

**Conclusion**

Accordingly, IT IS HEREBY ORDERED that **Smith's motion in limine to strike the Iazzettas' expert witness Gary A. Presswood [ECF 24] is GRANTED in part and DENIED in part.** Presswood is **precluded** from offering opinions that (1) Smith's floor is inherently hazardous to pedestrians; (2) Smith's floor caused Ralph's fall; (3) there is no evidence that Ralph contributed to his fall or injuries; and (4) if it is determined that Ralph's fall was the result of a wet walkway following a floor-cleaning operation, then the failure to warn or restrict access to that area would indicate a lack of appropriate risk management on Smith's part. Those corresponding portions of Presswood's expert report are also **excluded** from trial. Presswood's testimony at trial is limited to his opinions on the three principles of safety engineering.

IT IS FURTHER ORDERED **that the Iazzettas' motion in limine to exclude evidence of collateral source payments [ECF 28] is GRANTED.** The Iazzettas may offer admissible medical-expense evidence without regard to whether the providers were paid in full for the amounts billed. Smith's may not offer evidence of any adjustment, write-down, or discount of those medical expenses.

DATED: February 9, 2016

_____
Jennifer A. Dorsey
United States District Judge